UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KELLY HOLT, INDIVIDUALLY, JEDIDIAH HOLT, INDIVIDUALLY GEORGIA DEAN, AS NEXT FRIEND OF J.R.H, A MINOR, AND JAMES RICHARD HOLT, INDEPENDENT EXECUTOR OF THE ESTATE OF JESSIE ROSS HOLT, DECEASED <br><br> **PLAINTIFFS** <br><br> vs. <br><br> ST. LUKE'S HEALTH SYSTEM, DOING BUSINESS AS CHI ST. LUKE'S PATIENTS MEDICAL CENTER, PMC HOSPITAL, L.L.C, DOING BUSINESS AS CHI ST. LUKE'S PATIENTS MEDICAL CENTER, KEVIN A. LISMAN, M.D., AND HOUSTON CARDIOVASCULAR ASSOCIATES <br><br> **DEFENDANTS** | No._____ <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Kelly Holt, individually, Jedidiah Holt, Individually, Georgia Dean, as Next Friend of J.R.H., a minor, and James Richard Holt, Independent Executor of the Estate of Jessie Ross Holt, Deceased, and files this their Plaintiffs' Original Complaint, complaining of St. Luke's Health System, doing business as CHI St. Luke's Patients Medical Center, PMC Hospital, L.L.C., doing business as Chi St. Luke's Patients Medical Center, Kevin A. Lisman, M.D. and Houston Cardiovascular Associates, Defendants and for cause of action would state as follows:

### A. Parties

1. All plaintiffs are residents of and citizens of Harris County, Texas.

2. Defendants St. Luke's Health System, doing business as CHI St. Luke's Patients Medical Center and PMC Hospital, L.L.C., doing business as Chi St. Luke's Patients Medical Center are Texas Business entities, who owned and operated Chi St. Luke's Patients Medical Center at 4600 East Sam Houston Parkway, Pasadena Texas 77505, and they may both be served with citation herein by serving their registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75301-3136.

3. Kevin A. Lisman, M.D. is a citizen of Harris County, Texas and may be served with citation herein at Houston Cardiovascular Associates, 6400 Fannin, Suite 3000, Houston, Texas 77030.

4. Houston Cardiovascular Associates is a professional association of physicians with its principal place of business at 6400 Fannin, Suite 3000, Houston, Texas 77030, and may be served with citation by serving the person in charge at 6400 Fannin, Suite 3000, Houston, Texas 77030.

### B. Jurisdiction

5. Jurisdiction is proper in this case pursuant to 28 U.S.C.A. § 1331 (federal question), as this action arises out of violation of 42 U.S.C.A. § 1395dd (a) and (b) (EMTALA).

### C. Venue

6. Venue is proper in this court pursuant to 28 U.S.C.A. § 1391 (a) (1993), because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Texas.

### D. Plaintiffs' Demand for Jury Trial

Plaintiffs' Original Complaint

7.      Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with the Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### E. Conditions Precedent

8.      All conditions precedent have been performed or have occurred.

### F. Facts

9.      J.R.H., whose date of birth is December 16, 2004, is the biological daughter of Jessie Ross Holt, deceased.

10.     Kelly Holt was at all times material hereto lawfully married to Jessie Ross Holt, and is the surviving spouse of Jessie Ross Holt, deceased.

11      Jedidiah Holt is the surviving son of Jessie Ross Holt, deceased.

12.     James Richard Holt is the duly appointed independent executor of the Estate of Jessie Ross Holt, Deceased.

13.     Jessie Ross Holt was born on August 2, 1971.

14.     Kelly Holt was born on March 30, 1967.

15.     On or about January 11, 2016, at approximately 4:00 p.m., Jessie Ross Holt was brought emergently to CHI St. Luke's Patients Medical Center (hereinafter referred to as the "Hospital"), located at 4600 East Sam Houston Parkway, Pasadena, Texas 77505, in an ambulance, suffering from an emergency medical condition, as defined by 42 U.S.C.A. § 1395dd(e), to wit:  that he was suffering from a severe syncope episode that occurred while he had been running on a treadmill at 24 Hour Fitness, that he passed out and fell, that he started to turn blue, that his arms curled up, that CPR was administered, that after a few minutes he became awake and confused and that he had a history of suffering from severe aortic stenosis (a structural cardiac disorder).  Said emergency medical condition was readily apparent and known to all the emergency department personnel at the "Hospital."

Plaintiffs' Original Complaint

16.     *The Clinical Policy:  Critical Issues in the Evaluation and Management of Adult Patients Presenting to the Emergency Department with Syncope*, Annals of Emergency Medicine 431, Volume 49, No. 4:  April 2007 establish that the condition described in paragraph 15 above was a life threatening condition and describes the standard screening that the "Hospital" would have provided to Jessie Ross Holt on the occasion described in paragraph 15 above and the standard management that the "Hospital" would have provided to him on that occasion.  Said policy states that Jessie Ross Holt would have been admitted to the "Hospital."

17.     On the occasion stated in paragraph 15 above, Jessie Ross Holt presented himself to said emergency department and made a request for examination or treatment for a medical condition.

18.     On January 11, 2016, the "Hospital" was required to provide Jessie Ross Holt an appropriate medical screening examination within the capability of the "Hospital's" emergency department, including ancillary services available to the "Hospital's" emergency department, that was calculated to identify critical medical conditions, and to determine whether or not an emergency medical condition existed.

19     Such an appropriate medical screening examination, as described in paragraph 18 above, required that Jessie Ross Holt be admitted to the "Hospital," that he be evaluated by a cardiologist, that he have an echocardiogram performed to evaluate the severity of his documented aortic stenosis, that the records of previous echocardiograms be evaluated, and that Kevin A. Lisman, M.D. be notified and consulted with about the severity of the aortic stenosis.

20.     On January 11, 2016, the "Hospital," acting through its agents, servants and/or employees, had actual knowledge that Jessie Ross Holt was suffering from an emergency medical condition, as defined by 42 U.S.C. §1395dd(e)(1)(A), to wit severe and serious syncope episode that caused Jessie Ross Holt to turn blue, that required

that he have cardio-pulmonary resuscitation to survive the syncope episode and that he had severe aortic stenosis. Said syncope episode and aortic stenosis was being manifested by acute symptoms, such that in the absence of immediate medical attention could reasonably be expected to result in placing the health of Jessie Ross Holt in serious jeopardy.

21. On January 11, 2016, the "Hospital", acting through its agents, servants and/or employees, did not stabilize the emergency medical condition that Jessie Ross Holt was suffering from, or transfer him to a hospital where he could be stabilized.

22. On January 11, 2016, the "Hospital," acting through its agents, servants and/or employees, discharged Jessie Ross Holt without admitting him to the "Hospital," and providing him treatment to stabilize said emergency medical condition or transfer him to a facility that would provide him necessary treatment to stabilize his emergency medical condition.

23. On January 11, 2016, if the "Hospital," acting through its agents, servants and/or employees, provided Jessie Ross Holt with the required screening described in paragraph 18 above, Jessie Ross Holt would have been treated with a routine aortic valve replacement and he would have lived a normal life expectancy.

24. On or about April 8, 2016, Jessie Ross Holt was jogging on a treadmill at a gym and he collapsed and was transported by ambulance to Bayshore Medical Center in Pasadena, Texas. He was pronounced dead at Bayshore Medical Center on April 8, 2016. An autopsy established that the untreated severe aortic stenosis caused Jessie Ross Holt's untimely death.

25. On or about January 11, 2016, the "Hospital," acting through its agents, servants and/or employees, discharged Jessie Ross Holt, and told him that he was only dehydrated. The "Hospital" did not provide him with an echocardiogram, or a

consultation with a cardiologist, or communicate with his personal cardiologist, or examine existing echocardiograms.

26. Jessie Ross Holt, shortly after being discharged from the "Hospital," telephoned Houston Cardiology Associates to speak with Kevin A. Lisman, M.D. and discuss the events that led to his being emergently taken to the "Hospital," and the events at the "Hospital," and that the agents, servants and/or employees told him that he was only dehydrated. He relayed the foregoing information to a nurse employee of Houston Cardiology Associates, who later called him back to tell him that Kevin A. Lisman, M.D. agreed that he was just dehydrated and that he should keep his annual appointment with Kevin A. Lisman, M.D. at Houston Cardiology Associates.

27. At all times material hereto, a physician-patient relationship existed between Kevin A. Lisman, M.D. and Jessie Ross Holt.

28. Between November 13, 2013 and April 8, 2016, Jessie Ross Holt was a patient of Houston Cardiovascular Associates and Kevin A. Lisman, M.D. was assigned to provide him with cardiology services. During that period of time, echocardiograms were performed on Jessie Ross Holt to evaluate his heart and aorta. Those echocardiograms showed in part as follows:

    a. On November 13, 2013 the aortic valve max PG was 57.0 mmHg and the mean PG was 34.0 mmHG,

    b. On November 12, 2014 the aortic valve max PG was 76.0 mmHg and the mean PG was 48.0 mmHG, and

    c. On November 13, 2015 the aortic valve max PG was 103.0 mmHg and the mean PG was 69.0 mmHG.

29. At all times material hereto, Houston Cardiovascular Associates and Kevin A. Lisman, M.D. had actual knowledge that Sathish Cayenne, M.D, a cardiologist, had performed a transesphogeal echocardiogram on July 31, 2013, that was reported to

document that Jessie Ross Holt suffered from severe aortic stenosis, and that Jessie Ross Holt had been referred to Michael Sweeney, M.D., cardiothoracic surgeon to evaluate Jessie Ross Holt for an aortic valve replacement procedure. Jessie Ross Holt had the consultation with Michael Sweeney, M.D., who referred Jessie Ross Holt to Houston Cardiovascular Associates and Kevin A. Lisman, M.D. for continued medical management of the severe aortic stenosis.

30. The echocardiogram data stated in paragraph 28 above documented that Jessie Ross Holt had a severe aortic stenosis that was continually worsening, and by November 13, 2015, the aortic stenosis had become critically severe, necessitating that Jessie Ross Holt have a routine aortic valve replacement.

### G.  CAUSE OF ACTION AGAINST ST. LUKE'S HEALTH SYSTEM, DOING BUSINESS AS CHI ST. LUKE'S PATIENTS MEDICAL CENTER AND PMC HOSPITAL, L.L.C. DOING BUSINESS AS CHI ST. LUKES PATIENTS MEDICAL CENTER

31. Plaintiffs incorporate by reference all of the allegations contained in paragraphs 15 through 30 above.

32 At all times material hereto, Defendants St. Luke's Health System, doing business as CHI St. Luke's Patients Medical Center, PMC Hospital, L.L.C., doing business as Chi St. Luke's Patients Medical Center, hereinafter collectively referred to as the "Hospital," owned and/or operated Chi St. Luke's Patients Medical Center located at 4600 East Sam Houston Parkway, Pasadena, Texas. Chi St. Luke's Patients Medical Center was a hospital within the meaning of 42 U.S.C.A. § 1395dd(a).

33. At all times material hereto, the "Hospital" had an emergency department within the meaning of 42 U.S.C.A. § 1395dd(a).

34. On or about January 11, 2016, Jessie Ross Holt came to the emergency department at the "Hospital" and a request was made for examination or treatment for a medical condition, within the meaning of 42 U.S.C.A. § 1395dd(a).

35. When Jessie Ross Holt. presented to the emergency department at the "Hospital", on January 11, 2016, the "Hospital" had actual knowledge that he was suffering from an emergency medical condition, as defined by 42 U.S.C.A. § 1395dd(e)(1)(A), to wit: a severe syncope episode that was manifesting by severe syncope while exercising, that caused him to turn blue and necessitated cardio-pulmonary resuscitation to revive him and that he had a known history of severe aortic stenosis. That emergency medical condition was within the actual knowledge of the "Hospital," acting through its agents, servants and/or employees and was documented in the medical records that were created by the "Hospital," acting through its agents, servants and/or employees.

36. After the "Hospital" determined and documented that Jessie Ross Holt had an emergency medical condition, the "Hospital" failed to provide Jessie Ross Holt, within the staff and facilities available at the "Hospital" for such further medical examination and treatment as was required to stabilize said emergency medical condition within the meaning of 42 U.S.C.A. § 1395dd(b)(1)(A) or to transfer him to another medical facility within the meaning of 42 U.S.C.A. § 1395dd(b)(1)(B). Said violation of 42 U.S.C.A. § 1395dd(b)(1)(A and (B) was a proximate cause of the complained of untimely wrongful death of Jessie Ross Holt and conscious pain and mental anguish suffered by Jessie Ross Holt. from January 11, 2016 until his death on April 8, 2016. As a result of such violation, the "Hospital" is legally liable for the complained of damages.

37. On or about January 11, 2016, after Jessie Ross Holt. had come to the emergency department at the "Hospital" and made a request for examination or treatment for a medical condition, within the meaning of 42 U.S.C.A. § 1395dd(a), the "Hospital" failed to provide Jessie Ross Holt with a medical screening examination within the capability of the "Hospital's" emergency department that was routinely available to

Plaintiffs' Original Complaint

said emergency department, that was calculated to identify critical medical conditions and to determine whether or not an emergency medical condition existed.

38.	When Jessie Ross Holt presented to the emergency department at the "Hospital" on January 11, 2016, he sought a medical screening and treatment for the severe syncope episode that was manifesting itself by causing Jessie Ross Holt to have syncope episode while exercising, that caused him to turn blue and necessitated cardio-pulmonary resuscitation to revive him, and that he had a history of severe aortic stenosis.

39.	When Jessie Ross Holt. presented to the emergency department at the "Hospital", on January 11, 2016, seeking a medical screening and treatment the severe syncope episode that was manifesting itself by causing Jessie Ross Holt to have the syncope episode while exercising, that caused him to turn blue and necessitated cardio-pulmonary resuscitation to revive him, and that he had a history of severe aortic stenosis, the "Hospital" failed to admit him to the "Hospital," failed to provide him an echocardiogram, failed to provide him a consultation by a cardiologist, failed to evaluate past echocardiograms, and failed to notify and consult with Jessie Ross Holt's cardiologist, and such failures amounted to a violation of 42 U.S.C.A. § 1395dd(a).  Said violation of 42 U.S.C.A. § 1395dd(a) was a proximate cause of the complained of untimely wrongful death of Jessie Ross Holt and conscious pain and mental anguish suffered by Jessie Ross Holt. from January 11, 2016 until his death on April 8, 2016.  As a result of such violation, the "Hospital" is legally liable for the complained of damages.

40.	These causes of action against the "Hospital" are not healthcare liability claims within the meaning of Texas Civil Practice & Remedies Code § 74.001(13), and the damage caps that apply and pertain to a healthcare liability claim are not applicable in this case.  Plaintiffs' causes of action against the "Hospital" do not required any proof

that the Hospital violated any standard of care, and therefore the causes of action are not healthcare liability claims.

### H.  COMMON LAW CAUSE OF ACTION AGAINST KEVIN A. LISMAN, M.D. AND HOUSTON CARDIOLOGY ASSOCIATES

41. Plaintiffs incorporate by reference all of the allegations contained in paragraphs 15 through 30 above.

42. Kevin A. Lisman, M.D. acted negligently in providing medical treatment to Jessie Ross Holt, and such negligent medical treatment was a proximate cause of the complained of untimely death of Jessie Ross Holt.

43. At all times material hereto, Kevin A. Lisman, M.D. was a partner, principal, agent, servant and/or employee of Houston Cardiology Associates, and was at all times material hereto acting within the course and scope of such relationship.  Houston Cardiology Associates is vicariously liable for the negligent conduct of Kevin A. Lisman, M.D.

### J.  Damages

44. Plaintiffs seek all legal damages to which they are entitled because of the above and foregoing.  These damages are within the jurisdictional limits of this court.

45. The Estate of Jessie Ross Holt, Deceased. seeks to recover the following damages:

   a) Physical pain from January 11, 2016 until April 8, 2016, and

   b) Funeral and burial expenses.

46. Kelly Holt seeks to recover the following damages:

   a) Loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Kelly Holt, in reasonable probability, would have received from Jessie Ross Holt. had he lived;

    b) Loss of companionship and society, the loss of the positive benefits flowing from the love, comfort, companionship, and society that Kelly Holt, in reasonable probability, would have received from Jessie Ross Holt had he lived; and

    c) Mental anguish, the emotional pain, torment, and suffering experienced by Kelly Holt because of the death of Jessie Ross Holt.

47. Georgia Dean seeks to recover the following damages on behalf of J.R.H., a minor, daughter of Jessie Ross Holt.

    a) Loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that J.R.H., in reasonable probability, would have received from Jessie Ross Holt had he lived;

    b) Loss of companionship and society, the loss of the positive benefits flowing from the love, comfort, companionship, and society that J.R.H., in reasonable probability, would have received from Jessie Ross Holt had he lived; and

    c) Mental anguish, the emotional pain, torment, and suffering experienced by J.R.H., because of the death of Jessie Ross Holt.

48. Jedidiah Holt seeks to recover the following damages:

    a) Loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, excluding loss of inheritance, that Jedidiah Holt, in reasonable probability, would have received from Jessie Ross Holt had he lived;

    b) Loss of companionship and society, the loss of the positive benefits flowing from the love, comfort, companionship, and society that Jedidiah Holt, in reasonable probability, would have received from Jessie Ross Holt, had he lived; and

c) Mental anguish, the emotional pain, torment, and suffering experienced by Jedidiah Holt because of the death of Jessie Ross Holt.

### K.  Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendants be served with citation and be required to answer and appear herein; that after a jury trial herein, they have judgment against Defendants, both jointly and severally, as follows:

a) Judgment against Defendants for all of Plaintiffs' actual damages, both general and special, as described above;

b) Pre-judgment and post-judgment interest pursuant to Tex. Rev. Civ. Stat. Ann. art. 5069-1.05;

c) Costs of court; and

d) Such other relief to which Plaintiffs may be entitled, both general and special.

Respectfully submitted,

THE ONSTAD LAW FIRM

By: _____
ROCKNE W. ONSTAD
State Bar No. 15291000
State of Texas Bar No. 15291000
Southern District Federal I.D. No. 7074
Email:  rock@onstadlaw.com
119 Ranch Road 620 South
Austin, Texas  78734-5609
Telephone (512) 263-7600
Facsimile (512) 263-7800

**ATTORNEY FOR PLAINTIFFS**